IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Bobby Joe Barton, | ) | |
| | ) | CIVIL ACTION NO. 9:10-1362-RBH-BM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| James M. Dorriety; Scotty Bodiford; | ) | |
| Tracy H. Krien; Patricia Rae, PA; | ) | |
| Richard Sherman, MD; and | ) | |
| Joann Scaggs, MD; | ) | |
| | ) | |
| Defendants. | ) | |
| ______________________________ | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time this action was filed was a pretrial detainee at the Greenville County Detention Center[1], alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on December 30, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on January 4, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby

[1]Plaintiff is now an inmate with the South Carolina Department of Corrections. See Court Docket Nos. 34 and 55.





ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion on February 7, 2011. Defendants' motion is now before the Court for disposition.[2]

**Background and Evidence**

Plaintiff has filed an original verified complaint, as well as two verified amendments to his complaint (on August 4, 2010 and December 6, 2010).[3] In his pleadings, Plaintiff alleges that during the relevant time period he was a pre-trial detainee at the Greenville County Jail, and that upon being arrested on August 3, 2009 he informed the medical department at the jail that he was suffering from a severe right knee injury. Plaintiff alleges the Defendant Rae ordered an x-ray and prescribed medication for pain. Plaintiff alleges that sometime in August or September he was told by Rae that the x-ray did not reveal anything to be broken, but that in response to a question from the Plaintiff asking whether it was possible he could have a torn ACL, Rae said that an x-ray would not reveal a torn ACL. Plaintiff alleges that he then asked Rae if he could be referred to an orthopedic specialist for an assessment, and that Rae told him she could make a referral but that the final decision would be up to the Defendant Krien, the medical administrator.

Plaintiff alleges that Krien subsequently came to his housing unit and verbally attempted to intimidate him by telling him there would be no authorization of outside treatment by

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint as evidence in issuing a recommendation in this case.





any specialist unless Plaintiff could pay for the treatment. Plaintiff alleges that Krien also told him that "regardless of any . . . attending doctor's referrals she would not approve any outside treatment." Plaintiff alleges that he was then referred to the Defendant Dr. Richard Sherman for evaluation of his knee, and was prescribed some anti-inflammatory medication. Plaintiff alleges that Sherman told him he would check on him after the medicine "was completed", but that Sherman "never followed up as he said he would." Plaintiff alleges that he again complained to Krien, who threatened to put him in the segregated housing unit.

Plaintiff alleges that on November 15, 2009 he complained through the grievance process to the Defendant Dorriety (Jail Administrator) and that Dorriety responded by stating that Plaintiff needed to arrange to pay for an outside doctor, and that otherwise there was no basis for a referral. Plaintiff alleges that when Plaintiff continued to complain, Rae told him that the most she could do for him was to prescribe pain medication and refer him to "the new doctor." Plaintiff alleges that, in the meantime, he filed another grievance to Jail Administrator Scotty Bodiford, but that Bodiford failed to respond. Plaintiff alleges that on December 16, 2009, he was provided crutches and more pain medication, and that he stayed on crutches for about ten (10) days. Plaintiff alleges he was then told that he would be scheduled to see a new doctor.

Plaintiff alleges that on February 26, 2010, he was examined by the Defendant Dr. Scaggs, who agreed that he was damaged and said that she was referring him for treatment at the Greenville Memorial Hospital Medical Clinic. Plaintiff alleges, however, that Krien denied the referral, following which Plaintiff filed another grievance to the Defendant Dorriety on March 17, 2010. Plaintiff alleges that Dorriety again denied his grievance. Plaintiff alleges that the Defendant Scaggs had medical records showing that he was complaining about his medical treatment for seven





months on a regular basis, as well as a diagnosis from a physician's assistant and had also spoken to Plaintiff himself, but that Scaggs was deliberately indifferent to his complaints. Plaintiff also alleges that Scaggs refused to refer him for an MRI on his knee or to an orthopedic surgeon, stating only that she would recommend some type of steroid injection. See generally, Plaintiff's Pleadings. Plaintiff seeks monetary damages. See Court Docket No. 60.

Plaintiff has attached to his pleadings copies of two memoranda he received from the Defendant Dorriety, one dated November 23, 2009 and the other dated April 13, 2010. In the first memorandum, Dorriety advises Plaintiff that his x-rays did not support a referral of him to an orthopedic surgeon, and that if he wanted to obtain an orthopedic surgery consult he would have to arrange funding. In the second memorandum, Dorriety advises Plaintiff that he was not authorizing Plaintiff to be seen by a sports physician, as this request was not considered a medical necessity. See, Plaintiff's Exhibits.

In support of summary judgment in the case, the Defendant Tracy Krein has submitted an affidavit wherein she attests that she is the Medical Administrator for the Greenville County Detention Center, and that she is familiar with the course of medical treatment and evaluation provided to the Plaintiff during his incarceration at the Detention Center. Krein has attached as Exhibit A to her affidavit Plaintiff's medical records and other documents submitted by the Plaintiff that relate to the injuries and medical treatment placed at issue in this lawsuit, as well as Plaintiff's inmate account activity information showing canteen purchases Plaintiff made while at the Detention Center. Krein attests that these medical records show that Plaintiff received constant and continuous medical and mental health treatment while an inmate at the Detention Center, while his inmate account information shows that from August 2009 through August 2010, Plaintiff acquired Tylenol





thirteen separate times and Ibuprofen fourteen separate times from the commissary, both of which are over the counter drugs used to address pain and inflamation.

Specifically with respect to Plaintiff's medical records, Krein attests that Plaintiff made no complaints concerning his knee when he first arrived at the Detention Center on August 4, 2009, and that it was not until August 22, 2009 that he filed a medical request form seeking evaluation for knee pain. Plaintiff described the source of this pain as having fallen off a ladder at work in June 2009, prior to his incarceration. Krein attests that while Plaintiff waited to be seen by the medical staff, the Detention Center provided him with Tylenol to address his pain complaints. Krein notes, however, that Plaintiff thereafter filed a request to participate in the Detention Center work release program two days after seeking an evaluation for knee pain.

Plaintiff's knee was evaluated by Detention Center medical personnel in early September, and an x-ray was ordered. Krein attests that the x-ray was negative for any abnormality or trauma, following which it was recommended that Plaintiff treat his pain with over the counter medication. Krein attests that Plaintiff disagreed with this recommended course of treatment, and requested that the Detention Center pay for a referral to an orthopedic surgeon. Plaintiff was then scheduled for an appointment to determine whether referral to a specialist was medically necessary, and he was also prescribed Ultram to treat his pain complaints, which was in addition to the over the counter medication previously recommended. Krein attests that thereafter Plaintiff was evaluated in October 2009 by Dr. Richard Sherman, who diagnosed him with bursitis and prescribed a course of steroids to address Plaintiff's complaints. Krein attests that Dr. Sherman disagreed with Plaintiff's concern that he had a torn ligament or meniscus, and that a referral to a specialist was deemed unwarranted.





Krein attests that Plaintiff continued to complain about the course of treatment ordered by Dr. Sherman, and renewed his request for referral to an orthopedic surgeon, eventually filing a grievance. Krein attests that she responded to Plaintiff's grievance on November 6, 2009, explaining that Plaintiff had received prompt medical attention, and that he would once again be placed on the list to be examined by the physician's assistant. Krein attests that she also noted that Plaintiff had been purchasing Motrin from the canteen and had been given several different prescriptions. Nevertheless, Plaintiff filed another grievance making the same claim of lack of medical treatment, which was responded to by the Defendant Dorriety, Assistant County Administrator. Krein attests that Plaintiff was advised that the Detention Center would transport Plaintiff to any specialist of his choice, but that Plaintiff would have to make arrangements to pay for the doctor's services because Plaintiff was receiving adequate treatment for his complaints at the Detention Center. Plaintiff was also offered assistance in notifying his former employer of Plaintiff's potential workers compensation claim for falling off a ladder. See also, Plaintiff's Exhibit [Memorandum dated November 23, 2009].

Krein attests that Detention Center medical staff continued to treat Plaintiff for his complaints, variously prescribing Motrin and Ultram. Krein further attests that, despite Plaintiff's constant complaints about knee pain, he was observed walking without difficulty, and in late December 2009 he even requested to be moved to a pod where he would have to climb stairs everyday. Krein attests that in January 2010, medical staff again placed Plaintiff on the sick call list to see the doctor, following which he was seen in February 2010 by the Defendant Dr. Scaggs. Krein attests that, like Dr. Sherman, Dr. Scaggs determined that a referral to an orthopedic surgeon was not warranted and that an additional MRI would not be helpful. Dr. Scaggs diagnosed Plaintiff with





patellofemoral pain syndrome and mentioned referring him to a sports medicine clinic. Dr. Scaggs also prescribed Ultram and Mobic for pain and inflamation.

Krein attests that, based on the overall findings of all of the physicians and medical staff who treated the Plaintiff, the Detention Center determined that a referral to a sports medicine clinic was not necessary, and that if Plaintiff wished to follow that course of treatment, the Detention Center would provide transport but Plaintiff would have to pay for the service. Krein attests that Plaintiff then filed another grievance asserting that the Detention Center was deliberately indifferent to his serious medical needs by not paying for a referral to sports medicine, which was denied. See generally, Krein Affidavit with attached Exhibits.

The Defendant Joanne Scaggs has also provided an affidavit wherein she attests that she is a medical doctor. Scaggs attests that she evaluated Plaintiff during one medical appointment on February 26, 2010, but had no other contact with the Plaintiff. Scaggs attests that during this medical appointment she learned that Plaintiff claimed that he had hurt his knee when he fell off a ladder before arriving at the Detention Center, and that while at the Detention Center Plaintiff had an x-ray taken of his knee, which was negative, and Detention Center medical personnel had observed no swelling. Scaggs attests that Plaintiff wanted a specialist to evaluate his knee, but that she concluded that Plaintiff's knee complaints did not warrant surgical intervention or additional imaging studies. Scaggs attests that she observed Plaintiff being able to move from a sitting position on the floor to a standing position without difficulty, that she saw Plaintiff climb on the exam table without difficulty, and that based on Plaintiff's medical history and her physical examination of the Plaintiff, she diagnosed him with patellofemoral syndrome, which is something that can be treated by exercise. Scaggs attests that she also prescribed Ultram and Mobic to address Plaintiff's pain





complaints as well as any potential inflamation in the knee. Scaggs attests that her diagnosis was not something that would normally lead her to refer a patient to a specialist, but because of the Plaintiff's insistence that he see a specialist, she did agree to refer him to a sports medicine clinic to give Plaintiff access to a specialist to satisfy his own concerns. Scaggs attests, however, that Plaintiff's decision whether to seek this second opinion was elective, and that she made no determination concerning who should be responsible for paying for this elective referral. See generally, Scaggs Affidavit.

The Defendants have also provided a copy of Plaintiff's Inmate Prior Booking Record, his criminal record, his Inmate Behavior Maintenance Record, and his Medical Clinic Record for Inmate Worker Status. See generally, Defendants' Exhibits.

In opposition to the Defendants' motion, Plaintiff has submitted a "Declaration"[4] in which he attests that he "denies that he did not inform the intake medical nurse that he had an injured right knee and high blood pressure problems." Plaintiff attests that when he saw the Defendant Rae, she prescribed Motrin for his knee pain as well as a blood pressure medication. Plaintiff also concedes that Rae ordered an x-ray for him, although Plaintiff complains that only an MRI could properly show the condition of which he complains. Plaintiff also states that the pain medication he was given "never corrected the injury", and that he "does not agree" with the assessment Dr. Sherman submitted to the Court [see Defendants' Exhibit A-9]. Plaintiff attests that during his examination, Dr. Sherman indicated his injury was more serious than is reflected in the documentary

---

[4]Although this document has not been sworn to before a notary public, Plaintiff does state on the line above his signature "I declare under penalty of perjury that the foregoing is true and correct," which is sufficient. Zainalian v. Memphis Bd. of Education, 3 Fed.Appx. 429, 431 (6th Cir. 2001); see also 28 U.S.C. § 1746.





exhibit. Plaintiff further attests that he requested to see an orthopedic specialist because both Dr. Sherman and the physician assistant "admitted" they were not specialists in this area. Plaintiff also complains that the statements made in the Defendant Krein's affidavit are "contradictory", and states that he only obtained the over the counter medication indicated in the records because he was "put in a situation where [he] had no choice" because he was not receiving adequate prescription medication.

Plaintiff also attests that the Defendant Dorriety made it known to him that, since he did not get injured while at the Detention Center, the Detention Center had "no obligations to treat me any further than their staff," and that he was "placed in a very cold isolation cell as a deterrent to stop me from complaining of my injury and pain." Plaintiff also attests that the medical emergency reflected in Defendants' Exhibit A-18 was due to his right knee buckling and collapsing, and was not because he had fallen off of his top bunk, as is set forth in that exhibit.

With respect to Plaintiff's request for a transfer in housing, Plaintiff attests that he did so "for many reasons mainly because of the young violent offenders being housed all over GCDC except the three (3) pods . . .". With respect to his visit with Dr. Scaggs, Plaintiff states that he does not agree with her assessment, nor does he agree with her statements about his ability to move around during his examination. The remainder of Plaintiff's "Declaration" generally discusses the Defendants' evidence, and sets forth arguments for why Plaintiff believes he is entitled to relief. See generally, Plaintiff's "Declaration".

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no





genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

In order to avoid summary judgment, Plaintiff must present evidence sufficient to create a material issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).[5] In deciding this issue, it is important to remember that whether or not Plaintiff was

---

[5]As a pre-trial detainee during the time period at issue, Plaintiff's claim is evaluated under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment (which is used to evaluate conditions of confinement for those convicted of crimes). See Bell v. Wolfish, 441 U.S. 520, 535 (1979). However, the underlying standard is essentially the same. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)[Holding that the Fourteenth Amendment guarantees at (continued...)





provided with the care he *desired* is immaterial. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988) [the Constitution "does not guarantee to a prisoner the treatment of his choice."]; see also Brown v. Thompson, 868 F.Supp. 326, 329-330, n. 2 (S.D.Ga. 1994). Here, the Defendants have provided evidence from the medical administrator of the Detention Center, an affidavit from a licensed physician, and copies of Plaintiff's medical consult records, all of which detail Plaintiff's long and repeated history of being seen and evaluated by medical personnel for his medical conditions and complaints. Indeed, it is not even contested that Plaintiff received medical care for his complaints; rather, Plaintiff is simply dissatisfied with the medical care he received.

Mere disagreement between Plaintiff and the Defendants about the seriousness of his medical complaints or the course of his treatment does not constitute deliberate indifference on the part of any named Defendant. Lamb v. Maschner, 633 F.Supp. 351, 353 (D.Kan. 1986); Jackson, 846 F.2d at 817 ["Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."]. While Plaintiff obviously feels strongly about the course of treatment he should have received for his condition or conditions, he is not a doctor, and his lay opinion that his past treatment was incorrect or that he should have received additional or different treatment than the treatment he was provided is not in and of itself sufficient to create a genuine issue of fact as to whether he was denied proper medical care. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts

---

[5](...continued)
least Eighth Amendment protections].





are for.”]; see also Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff’s self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim].

The Defendants have submitted medical records as well as sworn statements from a medical administrator and a licensed physician attesting that Plaintiff’s care has been appropriate and meets the proper standard of care. No deliberate indifference is indicated in any of this evidence. Conversely, none of the general and conclusory statements made by Plaintiff in his “Declaration” provide evidence by themselves of a constitutional violation; Scheckells, 423 F.Supp. 2d at 348; and Plaintiff has presented no opinion or evidence from any medical professional showing that he should have received a different regimen of treatment than he received, or that his failure to receive a different course of treatment or referral to the specialist he desired constituted deliberate indifference to his serious illness or injury.[6] House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993)

---

[6]Even if the Court were to find that the evidence was sufficient to create an issue of fact as to whether any named Defendant was *negligent* with respect to Plaintiff’s treatment (a finding which the undersigned does not make), Plaintiff’s claim would still be subject to dismissal, as negligent or incorrect medical treatment is not actionable under § 1983. Estelle, 429 U.S. at 106; see Daniels v. Williams, 474 U.S. 327, 328-336 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-348 (1986); Ruefly v. Landon, 825 F.2d 792, 793-794 (4th Cir. 1987). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. Section 1983 simply does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989); Daniels v. Williams, supra [Jailers may owe a special duty of care to those in their custody under state tort law,...but...we reject the contention that the Due Process Clause of the Fourteenth Amendment embraces such a tort law concept]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Paul v. Davis, 424 U.S. 693, 697 (1976); see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].





[Plaintiff's conclusory allegations insufficient to maintain claim]; see Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Bender v. Suburban Hospital, Inc., 159 F.3d 186 (4th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see also Estelle, 429 U.S. at 105; Harris v. Thigpen, 941 F.2d 1495, 1505-1507 (11th Cir. 1991); see Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennan, 511 U.S. at 837. Therefore, no constitutional claim relating to medical care sufficient to survive summary judgment has been presented.

**Conclusion**

Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Such is the case here. Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

February 17, 2011
Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



